**Witold A. BADOWSKI**

v.

**The UNITED STATES.**

**No. 497–53.**

United States Court of Claims.
May 1, 1956.

Albert R. Teare, Cleveland, Ohio, for plaintiff.

G. M. Paddack, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

Plaintiff sues defendant for the infringement of his patent on an "Automatic Means for Opening Parachutes," being United States Letters Patent, No. 2,365,445. The issue now presented is the question of infringement and validity. The amount of recovery is reserved for later determination in case the court finds that the patent is valid and has been infringed.

Defendant says, first, its structure did not infringe plaintiff's patent; and, second, that the patent is invalid anyway, because anticipated by the prior art. We shall discuss these questions in the order discussed in the briefs.

1. First, is the issue of infringement. The device on which the plaintiff's patent was issued is intended to be attached to a parachute and is designed to cause the falling parachute to open automatically when it reaches a pre-selected altitude. It also discloses means for the opening of the parachute manually, without the use of the automatic features of the alleged invention.

The basic principle of the alleged invention is the use of increasing atmospheric pressure, which is encountered as an object falls toward the ground, to cause the mechanism to operate which opens the parachute. Plaintiff's structure contains an element that expands and contracts with the variation in atmospheric pressure. As an object falls and encounters increased atmospheric pressure, the contraction of this element sets in motion other elements which release the binding around the parachute and permits it to spring open. Means are provided to set the mechanism to operate at varying degrees of atmospheric pressure. Thus the parachute can be made to open at any desired altitude above the ground, since atmospheric pressure depends upon the altitude.

The element which expands and contracts is described in claim 1 of the patent as "a chambered gas-tight device capable of expansion and contraction responsive to variations in atmospheric pressure." We will call this a bellows. When the airplane leaves the ground this bellows contains air at ground level pressure. As the airplane gains altitude, the outside pressure on this bellows decreases, which permits the bellows to expand. When an object is dropped from the airplane and encounters increased atmospheric pressure, the bellows contracts, and this contraction causes other parts to move to a point where a spring is released, which forces down a part of the device, which releases the cord binding the parachute, and thus permits the parachute to spring open.

In the illustrated embodiment of the invention, the expansion of the bellows causes one of the movable members of the mechanism to rise upward. One end of a spring is attached to this movable member and the other end to an immovable element of the device. When increased atmospheric pressure is encountered the bellows contracts and allows the spring to pull the movable member down until a recess in a connected member comes opposite a ball which has been holding back another movable member, at the top of which are powerful springs under compression. The ball is then pushed into the recess, thus releasing the springs which thrust down the movable member which pushes the end of the parachute binding cord off of a stud to which it had been attached; thus releasing the parachute.

546

In the above description one essential element has been omitted, which is calibrated device for adjusting the position of the movable member which contains the recess for the escape of the ball, so that the ball will be forced into the recess and the binding cord on the parachute released at any desired altitude.

Connected with all these movable parts, of course, are fixed supports in relation to which the movable parts move.

Claims 1 and 2, which set forth the above invention, are substantially identical, but claim 4 adds the feature of permitting manual release of the parachute, independent of the automatic release.

We are of opinion that defendant's structure infringes the claims of plaintiff's patent.

The appearance of defendant's structure is entirely different from plaintiff's; however, the essential elements in defendant's structure come within the terms of plaintiff's claims, with one exception, which is the timer. This element we shall discuss later.

The plaintiff's claims call for a support. They next call for a chambered gas-tight device, which we have called a bellows, capable of expansion and contraction according to atmospheric pressure, and for a member that moves in accordance with the expansion and contraction of the chambered gas-tight device. Defendant's structure contains both these elements.

Plaintiff's claims also call for "means" for preadjusting the movable member to regulate the height at which the mechanism is designed to operate, and provide for "means" for actuating the parachute release at the predetermined height. Defendant's structure has such means.

Plaintiff's claims specify the elements of his invention in general terms. No particular means are specified. And so, notwithstanding the fact that defendant's structure differs in the particular means employed to accomplish the object of plaintiff's invention, it infringes plaintiff's patent because it employs means designated in plaintiff's claims. Plaintiff's patent was not limited to the particular structure illustrated, but was broad enough to cover other means designed to accomplish the specified purpose.

The doctrine of equivalence is a recognized principle of the law of patents. This doctrine was thus stated in Union Paper-Bag Machine Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935:

"* * * If two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape."

The above quoted language was quoted in the opinion of the Supreme Court in Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097, and the principle was therein applied.

We have no doubt that the elements of defendant's mechanism performed the function of the elements called for in the claims of plaintiff's patent. They certainly perform the same function to obtain the same result, to wit, the opening of a parachute. The only difference in the two structures is that one winds a wire on a drum which pulls a cord attached to the parachute, whereas the other releases a cord attached to the parachute, but both operations are designed to produce the same result, to wit, to permit the parachute to open.

Defendant says that its structure does not infringe plaintiff's because of this fact, that its structure pulls the cord whereas plaintiff's structure releases the cord. However, we think this is a distinction without a difference. Both the pulling of the cord and the releasing of the cord are intended to permit the parachute to spring open.

The parachute used by defendant is enclosed by fastening two flaps with eyelets at their ends over two cones on the parachute covering, and by running pins through the holes in the cones, thus holding the parachute secure. Defendant's device pulls the cord to which these pins

are attached and thus permits the parachute to spring open. Plaintiff's device, on the other hand, releases a cord, which permits the parachute to spring open. But this is immaterial, it seems to us, because the flaps might be held down just as well, not by pins, but by a cord or cords, which, when pushed off these studs, would release the flaps and permit the parachute to fly open. The cords and the pins perform exactly the same function.

It, therefore, seems to us that defendant's device is designed to accomplish the same result accomplished by plaintiff's device and in substantially the same way.

It seems pertinent to quote at this point an excellent statement, regarding the use of equivalence, contained in the opinion of Graver Tank & Mfg. Co. v. Linde Air Products Co., supra:

"But courts have also recognized that to permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing. Such a limitation would leave room for—indeed encourage—the unscrupulous copyist to make unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law. One who seeks to pirate an invention, like one who seeks to pirate a copyrighted book or play, may be expected to introduce minor variations to conceal and shelter the piracy. Outright and forthright duplication is a dull and very rare type of infringement. To prohibit no other would place the inventor at the mercy of verbalism and would be subordinating substance to form. It would deprive him of the benefit of his invention and would foster concealment rather than disclosure of inventions, which is one of the primary purposes of the patent system."

Now, there is one difference between plaintiff's structure and defendant's. Defendant employed a timing device which delayed operation of the release mechanism for the number of seconds at which it was set, if set above zero. However, if this timing device was set at zero, the release mechanism operated just as the mechanism described in plaintiff's patent.

Plaintiff does not claim that defendant's structure infringed his patent because it employed the timing device, but because it employed the other elements which he had described in his claims and specifications. The defendant's timing device was merely an addition to plaintiff's patent. But the rest of its device did infringe plaintiff's patent.

Plaintiff in the fourth claim of his patent, in addition to the automatic devices, provides also for a means of releasing the parachute manually. The defendant's device also has such means.

Plaintiff filed his application for patent on March 19, 1942. A week later, on March 26, 1942, he advised the Army Air Force that he had perfected such an invention. On April 10, 1942 they replied, stating that "no satisfactory automatic parachute opening device has been developed," and stating that if plaintiff had a full-sized working model which he cared to submit, they would conduct the necessary examination and tests of it. Later, on December 22, 1944, the Army Air Force wrote plaintiff relative to his invention, stating, "the method of operation appears to be feasible and the principle sound," and that they "will be pleased to test a sample of your device in comparison with one or more delayed opening devices which are being designed and fabricated by other sources."

We are of opinion that the information plaintiff furnished probably aided the Army Air Force to construct its F-1 release, which it had been unable to construct or to perfect prior to the disclosure in plaintiff's patent application.

2. Secondly, defendant says that plaintiff's claim is invalid because anti-

cipated by the prior art. It relies chiefly on the British patent issued to Galli and Briquet in 1928. The device is thus described in the specifications (page 1, line 9):

"This invention relates to apparatus capable of being fitted to parachutes for automatically controlling the opening of the same, in which the releasing means which produce the opening of the parachutes are so constructed and arranged as to effect the release after a definite height of free fall, said height being capable of adjustment and being fixed in advance."

It will be noted that this device differs from plaintiff's patent in that it provides for the opening of the parachute "after a definite height of free fall," whereas plaintiff's device provides for the opening of the parachute at a certain altitude or height above the ground, irrespective of the height of the previous fall. The aim and the results accomplished by the two devices are therefore different.

The preferred structure taught by the Galli patent was a timing device that regulated the height of the fall before the parachute opened. Of course this embodiment is entirely different from plaintiff's patent, which depended on atmospheric pressure to open the parachute.

However, the Galli patent also showed diagrammatically in figure 7 a device for opening a parachute in response to a change in atmospheric pressure. So far as it depended on atmospheric pressure to open the parachute, it employed the same principle employed by plaintiff. The other elements of this Galli device differ quite substantially from the illustrated embodiment of plaintiff's patent, even though designed to obtain the same general result.

The Galli patent provides for a bellows, to which is attached a horizontal bar pivoted on a perpendicular bar in such way as to permit the horizontal bar to oscillate as the bellows expands and contracts. At the other end of the horizontal bar is an electrical contact, which when brought into contact with another electrical contact suspended above it, causes an electrical current to flow into an electrical magnet which attracts a steel plate. The plate was provided with some sort of projection, which hooked on to a horizontal bar beneath, on which there was a spring with a knife at the end of the spring. When the electrical magnet attracted the steel plate beneath it, this disengaged the hook, and the spring thrust forward the knife on the end of the bar. The knife cut the cords binding the parachute, and thereby permitted the parachute to open. The electrical current was generated by a dry battery carried by the parachute.

The Galli patent differs from the illustrated embodiment of plaintiff's patent, in that it depends on an electrical current to operate the release, whereas the illustrated embodiment of plaintiff's patent depends on mechanical means, but the claims of plaintiff's patent may be broad enough to embrace electrical means as well.

It is doubtful whether or not the alternative Galli device would accomplish the purpose for which it was designed. It, apparently, was never put into successful practice. The disclosure is crude, but it does embody all the functions of plaintiff's patent, *if* modified to include a device for regulating the altitude at which the two electrical points make contact to operate the parachute release.

According to figure 7 of the Galli patent, contact would always be made at approximately the same altitude. No provision was shown for adjusting the making of contact according to varying altitudes. Plaintiff's patent did make such provision. It could be set so that the parachute would open at any desired altitude. This missing means in the Galli patent was supplied by plaintiff. It was an essential element to accomplish the desired result. Under some conditions, it is probably desirable to have the parachute open at 15,000 feet; under others, at 1,500 feet, etc.

It may be that the Galli patent suggested to plaintiff the idea of opening a parachute by increased atmospheric pressure, which it seems to us is the basic principle upon which plaintiff's patent is based. But, Galli's patent did not adequately disclose how the opening of the parachute could be regulated according to the desired height, and this was also essential.

Looking at it in retrospect, it may appear fairly simple to have modified Galli's device so as to provide for the release of the parachute at varying altitudes, but it is significant that no one did so for 14 years, not until plaintiff filed his application for a patent. During at least part of this time the Army and Navy had been undertaking to develop a device that would do what plaintiff claimed for his invention.

Judge Learned Hand, in Lyon v. Bausch & Lomb Optical Co., 2 Cir., 224 F.2d 530, 535, had this to say about the apparent ease of modifying a prior patent to accomplish the results achieved by a later patent:

"The most competent workers in the field had for at least ten years been seeking a hardy, tenacious coating to prevent reflection; there had been a number of attempts, none satisfactory; meanwhile nothing in the implementary arts had been lacking to put the advance into operation; when it appeared, it supplanted the existing practice and occupied substantially the whole field. We do not see how any combination of evidence could more completely demonstrate that, simple as it was, the change had not been 'obvious * * * to a person having ordinary skill in the art'—[35 U.S.C.A.] § 103."

So, notwithstanding the fact that, as we look back at the Galli patent in the light of plaintiff's invention and the Government's device, it seems fairly simple to have modified it to provide for the opening of the parachute at varying altitudes, nevertheless, nobody was able to work this out until plaintiff did so—14 years later.

Of course the means employed by plaintiff to adjust his device to cause the opening of the parachute at varying altitudes was quite simple and had long been known. However, plaintiff's patent is not based on just one element, but upon the combination of all of its elements, in order to accomplish the result in mind. Every element called for in plaintiff's claims had long been known, but nobody had ever disclosed how these elements might be combined to produce the desired result of releasing a parachute at varying altitudes.

The law is well settled that a combination of old elements which accomplish a new and beneficial result is patentable. This was first decided, so far as we know, in Seymour v. Osborne, 11 Wall. 516, 20 L.Ed. 33, and has been reaffirmed many times since. Just recently Judge Parker, speaking for the Fourth Circuit Court of Appeals in Colgate-Palmolive Co. v. Carter Products, Inc., decided March 8, 1956, and published in 230 F.2d 855, 862, quoted with approval from 20 R.C.L. 1125–1126 the following:

" ' "A combination is a composition of elements, some of which may be old and others new, or all old or all new. It is, however, the combination that is the invention, and is as much a unit in contemplation of law as a single or noncomposite instrument. The authorities establish the following propositions respecting the patentability of devices or processes of this character: (1) That a combination is patentable * * *. When the several elements of which it is composed produce by their joint action either a new and useful result, or an old result in a cheaper or otherwise more advantageous way." ' "

In Jeoffroy Mfg. Inc., v. Graham, 5 Cir., 219 F.2d 511, 519, it was said:

" * * * an improvement combination is patentable even though its constituent elements are singly revealed by the prior art, where, as

here, it produces an old result in a cheaper and otherwise more advantageous way;  *  *  *."

■ Even though the Galli patent had been issued by the United States Patent Office, we do not think it would have anticipated plaintiff's patent, because it lacked the essential element mentioned above; but is a foreign patent, and the decisions hold that a foreign patent will not be found to be anticipatory unless it clearly discloses all of the elements essential to the later patent. Seymour v. Osborne, supra; Hanifen v. Armitage, C.C., 117 F. 845; Permutit Co. v. Harvey Laundry Company, 2 Cir., 279 F. 713; General Electric Company v. Hoskins Mfg. Co., 7 Cir., 224 F. 464. This is because the foreign patent is not set out in detail, as are domestic patents.

■ ▪ The defendant also says that the plaintiff's patent is anticipated by the device used by the Weather Bureau for releasing from a balloon a parachute to which instruments have been attached. This device, which operates during ascent, also depends for its operation upon atmospheric pressure. However, this device was plainly not designed to apply the force necessary to release the instrumentality employed to hold a parachute together. The parachute which the pilot carries on his back, or which is attached to an object to be dropped, is contained in a case held tight against the action of a closely packed parachute, which springs open as soon as the enclosing case is opened. It takes a good deal of force to release the fasteners that restrain the opening of the parachute. The weather device was evidently not designed to accomplish any such purpose. We are of opinion that this device does not teach the combination of things embodied in plaintiff's patent.

■■ The defendant relies upon the Brewer patent, which was originally cited by the Patent Office as being anticipatory of plaintiff's patent. The Patent Office later held, however, that the Brewer patent did not anticipate plaintiff's patent. The presumption, of course, is in favor of the validity of the patent attacked, and we are of the opinion that the Brewer patent does not so clearly anticipate plaintiff's patent as to rebut this presumption.

■ We are of opinion plaintiff's patent is not anticipated by the prior art and, therefore, valid, and, further, that defendant's F–1 parachute release infringes plaintiff's patent.

Plaintiff is entitled to recover and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S. C.A.

It is so ordered.

JONES, Chief Judge, and LARAMORE and LITTLETON, Judges, concur.

MADDEN, Judge (dissenting).

I am not able to agree with the court's decision. The device of using "a chambered gas-tight device capable of expansion and contraction responsive to variations in atmospheric pressure" was not new. It was used in the Galli patent and in the Weather Bureau device, both of which anticipated the plaintiff's patent.

The use of the force generated by the expansion or contraction of a chamber filled with air or gas to release a trigger and thus set in motion other intermediate forces to accomplish an ultimate purpose was not new. Such use was embodied in both the Galli and the Weather Bureau structures.

The intermediate devices, springs, etc., used in the Government's structure were not copied from the plaintiff's patent. Of course they accomplished the same ultimate purpose, the untying of the package containing the packed parachute. But even a casual look at the figures shown in the findings discloses that the mechanical steps between the trigger and the opening of the parachute were entirely different in the plaintiff's and the Government's structures. Besides, looking at these intermediate devices alone, there was no invention in either of the structures. No two skilled

mechanical engineers would design the same structures for these intermediate steps, but no one could claim invention for any of the steps involved in either structure with which we are here concerned. Besides, as I have said, the Government did not use the plaintiff's intermediate devices.

What, then, is the basis of the plaintiff's patent. It cannot be the expansible chamber triggering other mechanical devices to exert force on the fastenings of the parachute. That idea was old. It cannot be the intermediate mechanical devices themselves. They are not claimed to be patentable, and at any rate they were not used in the Government's structure. It must, then, be the combination of the expansible chamber, the trigger, and the intermediate devices *for the purpose* of releasing a parachute.

But the combination too was old. It was exactly what had been actually done in the Weather Bureau device and what had been described in the Galli patent. In the Weather Bureau device the trigger was set so that when the expansible chamber expanded because the outside air pressure diminished as the balloon carrying the device rose, when that expansion reached the point which it would reach at a predetermined height, the trigger would be released and, by intermediate devices, the parachute would be detached from the balloon. It was exactly the combination of mechanisms and forces involved in the plaintiff's conception and the Government's structure. In the Weather Bureau device the expansion of the chamber released the trigger; in the plaintiff's and the Government's devices the contraction of the chamber released the trigger. Surely that difference is immaterial. If a device for releasing a parachute by the use of air pressure when the parachute is being carried up is in the public domain, surely one cannot get a patent monopoly on the same device used to release a parachute when it is being carried down.

The court speaks of the fact that the plaintiff, shortly after filing his application for a patent, disclosed his conception to the Air Force which wrote him that "no satisfactory automatic parachute opening device has been developed" and that his method appeared to be feasible. The court then says:

> "We are of opinion that the information plaintiff furnished probably aided the Army Air Force to construct its F–1 release, which it had been unable to construct or to perfect prior to the disclosure in plaintiff's patent application."

This judicial surmise would seem to me to be "probably" inaccurate. I find it hard to believe that the Air Force would not have known that air pressure acting on an expansible chamber could trigger the release of a wound-up spring and thereby pull a cord. The ingenious, whether workable or not, intermediate devices disclosed by the plaintiff could not have helped the Air Force much, for they did not come anywhere near to copying them. But the observation quoted above seems to me to be irrelevant. If the things which the plaintiff's application disclosed were already in the public domain, the fact that the Air Force did not know them, or had forgotten them, and only began to think of them seriously after seeing the plaintiff's application would neither help nor hurt the validity of the plaintiff's patent. One might have a guilty intent to infringe upon another's patent, but if it turns out that the patent had been anticipated, no legal consequences flow from his guilty state of mind.

When many persons, including the Air Force itself, were working feverishly to bring to mechanically workable perfection a device so essential as the one here involved, it is not remarkable that the Air Force's workable device should have followed closely, in point of time, the disclosure of the plaintiff's intellectual concept. But it is no proper case for the application of the maxim *post hoc ergo propter hoc*. And if it were, it would not prove anything about the validity of the plaintiff's patent.