THOMAS C. ROCKHILL, WADE T. SMITH, AND WILLIAM P. ROCK-HILL, PLAINTIFFS, *v.* ROBERT HANNA, ASA B. STRONG, EDWARD HEIZER, AARON ALDRIDGE, ROBERT B. HANNA, DAVID SHIELDS, THOMAS JOHNSON, JEREMIAH JOHNSON, AND GEORGE BRUCE.

Three judgments were entered up against a debtor on the same day.

One of the creditors issued a *capias ad satisfaciendum* in February, and the other two issued writs of *fieri facias* upon the same day, in the ensuing month of March.

Under the *ca. sa.* the defendant was taken and imprisoned, until discharged by due process of law. The plaintiff then obtained leave to issue a *fi. fa.*, which was levied upon the same land previously levied upon. The marshal sold the property under all the writs.

The executions of the first *fi. fa.* creditors are entitled to be first satisfied out of the proceeds of sale.

Each creditor having elected a different remedy, is entitled to a precedence in that which he has elected.

Besides, the *ca. sa.* creditor, by imprisoning the debtor, postponed his lien, because it may happen, under certain circumstances, that the judgment is forever extinguished. If these do not happen, his lien is not restored as against creditors who have obtained a precedence during such suspension.

THIS case was brought up from the Circuit Court of the United States for the District of Indiana, upon a certificate of division in opinion between the judges thereof.

The facts in the case are succinctly stated in the opinion of the court, and also the questions certified.

It was submitted, on the part of the plaintiffs, by *Mr. Thompson*, upon a printed brief by *Mr. Morrison* and *Mr. Mayor*, and submitted on the part of the defendants, upon a printed brief, by *Mr. O. H. Smith.*

*Mr. Thompson*, for plaintiffs.

We shall in the outset assume, that the following principles must be carried into an examination of this case, and that without a recognition of which, the questions submitted cannot be

intelligently and correctly determined. It is, perhaps, super-fluous to say, that these principles are only a reiteration of the long-established and uniform decisions of this court, viz.

1st. If the State of Indiana has a statute declaring and defining judgment liens on real estate, this court will give full effect to such statute.

2d. If the supreme judicial tribunal of the State has given construction to the statute, this court will follow that construction.

The transcript shows that in the court below there were three several judgments rendered on the same day, against the same defendant, but in favor of different plaintiffs, one of which was in favor of our clients, Rockhill, Smith & Rockhill; that the marshal sold real estate of the execution defendant, under executions issued upon all three judgments, offering to each set of plaintiffs a portion of the avails, according to the amount of their respective judgments; that Rockhill, Smith & Rockhill, the plaintiffs, rejected such apportionment, claiming the whole avails of the sale as their legal right, and that for refusing to pay over the whole, the plaintiffs instituted this suit against the marshal and his sureties on their bond.

We state the case thus briefly to call the special attention of the court to the two propositions above stated; and we insist that the questions submitted naturally and necessarily suggest the inquiry, as a first principle to be ascertained, has the State of Indiana a law on the subject of judgment liens?

"Judgments in the Circuit and Supreme Courts of this State shall have the operation of, and shall be liens upon the real estate of the person or persons against whom such judgments may be rendered, from the day of the rendition thereof." Revised Statutes of Indiana, 1838, page 306, § 22. The revised Statutes of 1843, page 454, are to the same effect.

We do not insist that the literal reading of the statute above cited, determines the questions submitted, in our favor; neither does it determine any thing against us. As to judgments of the same date, it is altogether silent. It neither in terms asserts the principle for which we contend, that priority should be accorded to the most vigilant creditor, nor the principle assumed and acted upon by the marshal, when he undertook to apportion the avails of the sale among the several creditors. They both rest upon the same foundation — a construction of the statute.

We proceed to show that the Supreme Court of Indiana has given the statute a construction that, if followed by this court, must determine the questions submitted, in favor of the plaintiffs. The case of Michaels v. Boyd, and others, Indiana Rep. 100, while it recognizes the doctrine that judgments rendered at

the same time, have, under the statute, no priority of lien over each other, it yet decides that the creditor whose execution is first issued and levied, gains priority, as the most vigilant creditor.

If any thing were required to add weight to the opinion, we might suggest that it was pronounced by Judge Blackford, whose reputation as a jurist, we suppose, is not entirely unknown to this court. It will be also noticed that the decision is sustained by the cases of Adrams *v.* Dyer, 8 Johns. 347; Waterman *v.* Haskin, 11 Johns. 228, and 1 Howard's Miss. Rep. 39.

It was argued below, that the decision of the Supreme Court of Indiana could not be considered a judicial construction of the local law of Indiana, on the subject of judgment liens. We suppose the argument will be pressed in this court. We cannot, however, believe it will find any favor here. The very second paragraph in Judge Blackford's opinion, cites the statute, by book and page, and his whole reasoning is in direct reference to the statute. The statute is the basis, the *substratum* of the decision.

We trust we shall not be considered guilty of the slightest disrespect, or as transgressing any rule of propriety, by alluding to the circumstance that at one important conjuncture of this case, his Honor Judge McLean allowed his judgment to be controlled by the same authorities cited by Judge Blackford in his opinion, which, by the by, was previous to the decision in Indiana. Judge McLean then ruled, that by our superior vigilance in taking out execution, levying, and selling, we had gained such a priority as entitled us to the whole of the proceeds of the sale. Afterwards, however, and after the second sale, (the first having been set aside by the court on the application of the attorneys for the other execution plaintiffs,) the learned judge, on the authority of the opinion of Chief Justice Marshall, in Rankin & Schatzell *v.* Scott, 12 Wheat. 177, had his former opinion shaken.

We therefore propose to show that the case in 12 Wheat. is not applicable to the case before the court.

Firstly. The judgments in that case were of different dates, and the court below had determined a priority in favor of the younger judgment, to the exclusion of the older one. The District Court of Missouri had decided that a sale by a sheriff, under a second judgment, but first execution, divested the lien of a first judgment. The decision was properly reversed; but the learned and able judge, in his opinion, never once alluded to the case of judgments of the same date. That was a question not before the court. The question was one between prior and subsequent judgment liens.

We are aware that the argument of the judge is said to be against us, but we cannot perceive it to be so. The opinion suggests an analogy between a statutory lien and a mortgage lien, as regards their similar binding effect. This we admit. The lien created by a prior judgment, in reference to a subsequent one, is very similar to that of a prior mortgage, duly recorded, in reference to a subsequent mortgage; and we feel that we can admit, without endangering our position, that in both the case of a judgment and a mortgage, the prior lien is entitled to prior satisfaction. The opinion, however, concedes, that even a prior lien might be displaced by some act of the party holding it; though it is said "the single circumstance of not proceeding on it, till a subsequent lien has been obtained and carried into execution, has never been considered such an act." Our case shows not only delay on the part of our adversaries, but delay for a consideration.

If, however, more is sought to be made of the analogy of the learned judge on the subject of the two kinds of lien than we concede, we shall insist, not only that the case itself is not in point, but that there is a substantial dissimilarity between them. It was said, we believe, by Lord Mansfield, that there is nothing so apt to mislead as a simile; and the remark will certainly hold true in regard to the parallel supposed to exist between a judgment lien and a mortgage lien. While a judgment lien is general, a mortgage lien is specific. A judgment creditor acquires no distinct or independent interest in the estate of his debtor. A mortgagee has such an interest in the particular thing mortgaged. He may take possession; he may eject the mortgagor.

It will be noticed that the opinion under review, like that of Judge Blackford, assumes to give construction to a local statute, on the subject of judgment liens. The opinion commences by quoting the statute of Missouri, as Judge Blackford's does that of Indiana. The Missouri statute had, however, received no judicial construction. This court had, therefore, full authority to construe it. The Indiana statute had received a construction which, right or wrong, this court, according to its own admission, is bound to follow.

Secondly. We consider that, in perfect consistency with the most exalted estimate of the ability of the eminent Judge who delivered the opinion in 12 Wheat., we have the right to suppose that, had the Supreme Court of Missouri given her statute the construction that the District Court did, he would have felt constrained to follow it, erroneous as he deemed it to be. This supposition we feel authorized to cherish, by the uniform decisions of this court on the subject of the adjudication of the

Rockhill et al. *v.* Hanna et al.

State courts on their local statutes. The authorities on this subject are so numerous and so clear, and must be so familiar to this court, that an array of them might be considered uncalled for. We hope, however, to be excused for referring to a few of them.

In the case of Shelby *v.* Guy, 11 Wheat. 367, the court holds the following language:—"That the statute law of the States must furnish the rule of decision to this court, as far as they comport with the Constitution of the United States, in all cases arising within the respective States, is a position that no one doubts. Nor is it questionable, that a fixed and received construction of their respective statute laws in their own courts, makes, in fact, a part of the statute law of the country, however we may doubt the propriety of that construction."

"In construing local statutes respecting real property, the courts are governed by the decisions of the State tribunals." 6 Wheat. 119.

"Where the question upon the construction of the statute of the State, relative to real property, has been settled by any judicial decision in the State where the land lies, the Supreme Court, upon the uniform principle adopted by it, would recognize that decision as a part of the local law." Gardner *v.* Collins et al. 2 Pet. 58.

We only add a few quotations from the case of Green *v.* Neal, 6 Pet. 291 — a case in which this court, in following a then recent decision of the State court, overruled its former construction of a local law, on the sole ground that the State court had changed its construction.

*Mr. Smith*, for defendants.

1. Did the plaintiffs obtain a preference by the issue and levy of the first execution? Certainly not; that execution was a *ca. sa.*, and the levy was on the body, not the lands.

2. Did the plaintiffs obtain a preference by the first sale of the lands, and the order of the court, to appropriate the proceeds to their execution to its amount? Certainly not; because the sale and the order were set aside by the court, and stood as if they had not been made.

3. Did the plaintiffs obtain a preference, by the order of the court, for the issue of the *vend. ex.* on which the lands were sold? Certainly not. As the clerk had full power to issue all the writs, without any order of court, as is the uniform practice, and all the writs were issued by the clerk on the same day, placed in the hands of the marshal at the same time, and the property advertised and sold under all the writs by the marshal at the same time.

4. Did the plaintiffs obtain a preference, by the delay of the other judgment plaintiffs, to issue their writs of *vend. ex.* on their levy?   Clearly not.   See 4 McLean, 554;  Rankins *v.* Scott. 12 Wheaton, 177.

5. The original general liens being equal, did the issuing and service of the *ca. sa.*, and imprisonment of Allen by the plaintiffs, suspend or displace the lien of their judgment, so as to give the other judgments a priority of lien on his real estate?   We contend that they did, and rely upon the following authorities: Tayloe *v.* Thompson, 5 Peters, 358;  Bigalow *v.* Cooper, 1 Cowen, 56;  Ranson *v.* Keys, 9 Cowen, 128;  Sunderland *v.* Loder, 5 Wendell, 58.

6. Did the issue of the writs of *fieri facias* by the other plaintiffs on their judgments, and their levy on the lands in controversy, pending the imprisonment of the defendant in execution on the *ca. sa.*, give to the judgments, executions, and levy a special lien on the lands levied upon, and a preference for the whole proceeds, to the amount of their judgments?   So we contend, and rely upon the following authorities to sustain the position: Adrams *v.* Dyer, 8 Johns. 347;  Waterman *v.* Haskins, 11 Johns. 228;  Burney *v.* Boyett, 1 Howard, Miss. R. 39;  Michaels *v.* Boyd and others, Smith's. Indiana R. 100.

Mr. Justice GRIER delivered the opinion of the court.

This case comes before us on a certificate of division of opinion between the Judges of the Circuit Court of the United States for the District of Indiana.  It is an action on the official bond of the marshal, and the questions certified arise on the following facts: Rockhill & Co., the plaintiffs in this issue, and Price & Co., and Siter & Co. had each entered up judgments on the same day, (19th November, 1838,) against John Allen.

On 5th of March, 1839, Price and Siter issued *fi. fas* which were levied on the lands of Allen.  On the 7th of February, 1839, plaintiffs issued a *ca. sa.*, on which the defendant, Allen, was arrested and imprisoned till the passage of the act of General Assembly of Indiana, of 13th of January, 1842, to abolish imprisonment for debt; by virtue whereof he was released, on the ground that this act had been adopted by act of Congress.  The plaintiff afterwards, in March, 1844, on affidavit and proof of the defendant's discharge by force of the insolvent law, had leave of the court to issue a *fi. fa.* which was levied on the same land previously seized in March, 1839, on the executions issued on the other judgments; and the marshal was proceeding to sell, when writs of *vend. exp.* on these judgments were put in his hands.  A sale was made,

Rockhill et al. *v.* Hanna et al.

but afterwards set aside by the court. In May, 1844, writs of *vend. exp.* on all three of the judgments were put into the hands of the marshal — on these, the property of Allen was sold, the money raised being insufficient to pay all the judgments. Plaintiff (Rockhill) claimed that the money should be applied first to the satisfaction of his judgment; Price and Siter claimed that it should be applied to satisfy their judgments first. Whereupon the court certified a division of opinion on the following questions:

"1st. Whether or not the plaintiffs in this suit are entitled to more than their distributive share of the proceeds of the sale.

2d. Whether they are not entitled to the whole proceeds, to the extent of what is justly due on their judgment.

3d. Or whether the executions first levied are not entitled to the whole proceeds of the sale.

4th. Or whether there can be any preference recognized by reason of superior diligence, the judgments being of equal dates, and not impeached."

In the State of Indiana, judgments are liens upon "the real estate of the persons against whom such judgments may be rendered, from the day of the rendition thereof." As the statute provides for no fractions of a day, it follows that all judgments entered on the same day have equal rights, and one cannot claim priority over the other. In England, when several judgments are entered to the same term, (and by fiction of law, the term consists of but one day,) the judgment creditor, who first extends the land by *elegit*, is thereby entitled to be first satisfied out of it. The case would be much stronger, too, in favor of the first *elegit*, if one of three judgments had levied a *fi. fa.* on the goods and chattels of the defendant, the second taken his body on a *ca. sa.*, and the third laid his *elegit* on his land. For each one, having elected a different remedy, would be entitled to a precedence in that which he has elected. This principle of the common law has been adopted by the courts of New York, as is seen in the cases of Adams *v.* Dyer, 8 Johns. 350, and Waterman *v.* Haskins, 11 Johns. 228; and also by the Supreme Court of Indiana, in Marshal *v.* Boyd and others, where it is said, the mere delivery of an execution, as in case of personal property, will not give a priority, but the execution first begun to be executed, shall be entitled to priority.

The application of these principles to the present case would give the preference to the judgments of Siter and Price, which were levied on the land five years before the plaintiff's levy on the same. An execution levied on land, is begun to be executed, and is an election of the remedy by sale of it; and

the mere delay of the sale, if not fraudulent, injures no one and cannot postpone the rights of the creditor who has first seized the land and taken it into the custody of the law for the purpose of obtaining satisfaction of his judgment. If he has obtained a priority over those whose liens are of equal date, by levying his execution, he is not bound to commence a new race of diligence with those whose rights are postponed to his own. There may be a different rule as to a levy on personal property, where it is suffered to remain in the hands of the debtor. But liens on real estate are matters of record and notice to all the world, and have no other limit to their duration than that assigned by the law.

But we do not think it necessary to rest the decision of this case, merely on the question of diligence, or to decide whether this doctrine has been finally established as the law of Indiana. The plaintiff's lien does not, by the statement of this case, stand on an equality as to date with that of the other judgments. By electing to take the body of his debtor in execution he has postponed his lien, because the arrest operated in law as an extinguishment of his judgment. It is true, if the debtor should die in prison, or be discharged by act of the law without consent of the creditor, he may have an action on the judgment, or leave to have other executions against the property of his creditor. The legal satisfaction of the judgment, which for the time destroys its lien and postpones his rights to those whose liens continue, is not a satisfaction of the debt, but, as between the parties to the judgment, it operates as a satisfaction thereof. The arrest waives and extinguishes all other remedies on the goods or lands of the debtor while the imprisonment continues, and if the debtor be discharged by the consent of the creditor, the judgment is forever extinguished; and the plaintiff remitted to such contracts or securities as he has taken as the price of the discharge. But if the plaintiff be remitted to other remedies by a discharge of his debtor by act of law, or by an escape, it will not operate to restore his lien on the debtor's property, which he has elected to waive or abandon as against creditors who have obtained a precedence during such suspension. The case of Snead v. McCoul, 12 How. 407, in this court, fully establishes this doctrine. It is to be found in the common law as early as the Year Books, and is admitted to be the law in almost every State in the Union. See Year Book, 33 Henry VI. p. 48; Foster v. Jackson, Hobart, 52; Barnaby's case, 1 Strange, 653; Vigers v. Aldrich, 4 Burr. 2483; Jaques v. Withy, 1 T. R. 557; Taylor v. Waters, 5 Maule and Selwyn, 103; Ex parte Knowell, 13 Vesey, jun. 193, &c., &c., &c. And in New York, Cooper v. Bigelow, 1 Cow.; Ransom v. Keys, 9

Rockhill et al. *v.* Hanna et al.

Cow. 128; 5 Wend. 58. In Pennsylvania, Sharp *v.* Speckenyle, 3 Serg. & R. In Massachusetts, Little *v.* The Bank, 14 Mass. Rep. 443.

The insolvent law of Indiana which discharges the person of the debtor from imprisonment upon his assigning all his property for the benefit of his creditors, provides that his after acquired property shall be liable to seizure, and also that liens previously acquired shall not be affected by such assignment and discharge; but it does not affect to change the relative priority of lien creditors, as it existed at the time of the discharge, or to take away from any lien creditor his prior right of satisfaction, which had been vested in him previous to such discharge. Neither the letter nor spirit of the act will permit a construction which by a retrospective operation would divest rights vested before its passage.

We are of opinion, therefore, that the several questions certified from the court below, should be answered as follows:—

1st. That plaintiffs in this suit are not entitled to more than their distributive share of the proceeds of the sale.

2d. That they, are consequently, not entitled to the whole proceeds to the extent of what is due on their judgment.

3d. The executions of Siter & Co. and of Price & Co. are entitled to be first satisfied from the proceeds of the sale.

4th. That the decision of the preceding questions, being a disposition of the whole case, it is unnecessary to give any answer to the fourth question.

## *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Indiana, and on the points or questions on which the judges of the said Circuit Court were opposed in opinion and which were certified to this court for its opinion, agreeably to the act of Congress in such case made and provided, and was argued by counsel. On consideration whereof, it is the opinion of this court.

1. That the plaintiffs in this suit are not entitled to more than their distributive share of the proceeds of the sale.

2. That they are consequently, not entitled to the whole proceeds to the extent of what is claimed on their judgment.

3. The executions of Siter &, Co. and of Price & Co. are entitled to be first satisfied from the proceeds of the sale.

4. That the decision of the preceding questions being a disposition of the whole case, it is unnecessary to give any answer to the fourth question, which is an abstract proposition

not necessary to be decided by this court. Whereupon it is now hereby ordered and adjudged by this court, that it be so certified to the said Circuit Court.