Frederick J. P. van VEEN

v.

The UNITED STATES.

No. 345-60.

United States Court of Claims.

Dec. 15, 1967.

James L. Dooley, Washington, D. C., attorney of record, for plaintiff. Cush-

man, Darby & Cushman, Washington, D. C., of counsel.

Louise O'Neil, Washington, D. C., with whom was Asst. Atty. Gen. Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner Donald E. Lane with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on November 8, 1966. Exceptions to the commissioner's findings and recommended conclusion of law were filed by defendant and the case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court agrees with the commissioner's findings, opinion, and recommended conclusion of law, with modifications, as hereinafter set forth, it hereby adopts the same as modified as the basis for its judgment in this case. The court concludes, therefore, that claim 1 of patent 2,730,721 is valid and has been used by defendant without license of the owner and that plaintiff is entitled to recover, and judgment is entered for plaintiff in the sum of $45,786.01, plus interest at 4 percent per annum as part of just compensation, from January 1, 1967, to the date of payment.

Commissioner LANE'S opinion,* as modified by the court, is as follows:

This is a patent suit under the provisions of Title 28 U.S.C. § 1498, in which plaintiff seeks to recover reasonable and entire compensation for the un-

8. We are unable to fix the amount of the judgment because the record does not show the exact date of taking.

\* The opinion, findings of fact, and recommended conclusion of law are submitted under the order of reference and Rule 57(a).

authorized use or manufacture by or for the defendant of a patented invention. Plaintiff specifically alleges that certain sleeping bags used for aircrew survival by the Department of the Air Force embody an invention defined in United States Letters Patent 2,730,721, entitled "Sleeping Bag Structure," owned by the plaintiff. Said patent, referred to hereinafter as the patent in suit, issued to plaintiff January 17, 1956. The invention which is the subject of this suit is also the subject of Canadian Patent 486,-108, owned by plaintiff.

The principal issues before the court are: (1) whether the subject invention defined in the patent in suit is patentable under the provisions of Title 35 of the United States Code, (2) whether the accused sleeping bags embody the subject invention, and (3) what would be reasonable and entire compensation under the circumstances.

It is found that the subject invention is patentable and the patent in suit is valid. In addition it is found that the accused sleeping bags embody the invention claimed in the patent in suit. It is concluded that the plaintiff is entitled to recover $45,786.01 for unauthorized use of plaintiff's invention.

Plaintiff, a citizen of Canada and a resident of Ottawa, in 1943 was an executive of a mattress manufacturing concern that also made down fillings for sleeping bag manufacturers. During 1943, plaintiff constructed a sleeping bag having a special insulated seam along the periphery of the bag so that the heat lost through the seam would be no greater than through the panels. Plaintiff used the sleeping bag while on hunting trips for the next several years.

In 1951, the Royal Canadian Air Force was interested in finding a very lightweight sleeping bag for use as part of the survival equipment to be carried aboard fighter aircraft that operated in the far north. The Royal Canadian Air Force contacted plaintiff for his advice. Plaintiff showed the Air Force consultant the bag that he had made in 1943 having the special insulated seam construction. The consultant requested plaintiff to make up another lightweight bag having the special construction for an Arctic equipment testing mission conducted above the Arctic Circle. It was found that the furnished sleeping bag was ideal for survival purposes. Using the van Veen bag as a prototype, the Royal Canadian Air Force promulgated a specification for survival-type sleeping bags and proceeded to purchase 1,920 survival-type sleeping bags from parties other than plaintiff. In May 1952, plaintiff filed an application for a Canadian patent covering the insulated seam sleeping bag. After the Canadian patent issued in August 1952, plaintiff entered into a non-exclusive license agreement with the Canadian Government whereby the Government agreed to pay plaintiff a royalty of $2.00 per bag on the bags already purchased and $1.50 per bag on subsequently purchased bags.

Plaintiff's survival-type sleeping bags were used by the 1953 English Expedition that successfully climbed Mount Everest. The leader of the expedition, Sir John Hunt, reported that they were the warmest sleeping bags that he had used.

Plaintiff filed an application for a United States patent in December 1952. The patent specification describes the sleeping bag as comprising an upper and/or lower panel or section with each panel having an outer and an inner fabric that are divided by transverse compartments or channels formed by partition walls. Each compartment is filled with insulating material, preferably duck down. The principal feature of plaintiff's invention resides in the seam-closing structures for joining the periphery of the panels together in such a manner as to reduce the heat loss through the joined portion. The peripheral edges of the inner fabrics of the panels are sewn together forming an inner seam, and the peripheral edges of the outer fabrics of the panels are sewn together forming an outer seam. Insulation is placed between the inner and outer seams to insulate the inner seam from the atmosphere.

One of the controversies of this case is whether the seam-closing compartment surrounding the inner seam includes peripheral partition walls between the inner and outer fabrics near the inner seam. Plaintiff terms the edge compartment as a seam-closing compartment which supports the position that the inner seam is enclosed and that there is no communication between the seam-closing compartment and the transverse compartments of the panels. When the entire patent specification, including Figs. 3, 5, and 6 is considered, it becomes clear that the seam-closing compartment includes peripheral partition walls blocking off communication between the transverse panel compartments and the seam-closing compartment.

In patent claim 1 of the patent in suit, plaintiff defines his invention in the following terms:

A sleeping bag comprising

upper and lower sections,

each said section having an upper and lower wall and insulating material therebetween,

the lower wall of said upper section and the upper wall of said lower section being brought together to contact each other and form a lateral seam extending substantially entirely about said sleeping bag, .

means defining a seam insulating compartment extending substantially entirely about said sleeping bag including a wall outside of and spaced from said lateral seam a distance at least as great as the distance between said upper and lower walls of each said section, and

solid insulating material substantially filling said seam closing compartment.

Defendant contends that the subject invention was *disclosed* in a printed publication more than 1 year prior to the filing date of the patent in suit (Title 35 U.S.C. § 102(b)). Alternatively, defendant contends that the subject invention was *obvious* in view of the prior art at the time that the patent application was filed in the United States Patent Office (Title 35 U.S.C. § 103).

The printed publication which defendant refers to is a Military Specification MIL–B–830, entitled "Bags, Sleeping, M–1949," dated July 25, 1949. The Military Specification is concerned with the construction of M–1949 sleeping bags for foot soldiers. For Arctic usage it is suggested that one bag be placed inside another to provide sufficient warmth. The construction of the seams of the sleeping bag is not entirely clear. The two front panels are joined to the back panel along a 30-inch section in such a manner as to constitute an insulated seam-closing compartment. However, the major portion of the seam is an uninsulated seam structure in which each of the several fabric layers is sewn together forming one border seam. The specification does not show or suggest "a seam insulating compartment extending substantially entirely about said sleeping bag." The M–1949 configuration does not lend itself to such an insulated closing compartment about its periphery. Moreover, there is no reason to believe that the Military Specification envisaged or recognized prevention of heat loss as a characteristic, quality, or result of the insulated seam there depicted. It is concluded that the Military Specification does not anticipate the subject invention.

Alternatively, defendant contends that the subject invention is anticipated because it was obvious in 1952 to adapt the seam structure of the M–1949 sleeping bag to the sleeping bag shown in Daiber patent 2,464,380 (Title 35 U.S.C. § 103). As previously mentioned the M–1949 sleeping bag does not have an insulated seam-closing compartment substantially about its periphery; thus the composite structure of the M–1949 seam structure with the Daiber sleeping bag would not show the subject invention. This is true

even presupposing that it was obvious to make the suggested combination in 1952.

The Supreme Court in the recent decision of Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966), reaffirmed the objective standard of patentability stating:

> * * * Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. * * *

It is incorrect to hold that an invention was obvious when made, simply because the invention is simple in nature and is easily understood when described in a patent specification. Experience has shown that some of the simplest advances have been the most nonobvious. The prior art, in addition to the Daiber '380 patent mentioned above, cited by the defendant, provides a prior art base which renders the distinctions between the prior art and the subject invention even more significant. None of the prior art cited by defendant copes with the problem of heat loss through the peripheral seams of the sleeping bag.

Defendant says that under the rule of General Electric Co. v. Jewel Incandescent Lamp Co., 326 U.S. 242, 247–249, 66 S.Ct. 81, 90 L.Ed. 43 (1945), it is of no moment that the prior art (particularly MIL–B–830) failed to recognize that seams of this type would prevent or diminish heat loss.[1] But the Supreme Court has also indicated that "accidental results, not intended and not appreciated, do not constitute anticipation." Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 66, 43 S.Ct. 322, 329, 67 L.Ed. 523 (1923); See also Tilghman v. Proctor, 102 U.S. 707, 711, 26 L.Ed. 279 (1880). In the General Electric case, the court found that the new use, advantage, or quality was apparent in view of the prior art (see 326 U.S. at 248, 66 S.Ct. 81). In the present case, it was not obvious to convert the special 30-inch seam of the Military Specification, even though it happened to be insulated, into the overall peripheral sleeping bag seams of the plaintiff's patent. In that respect the unrecognized quality (i. e., heat-loss prevention) inhering in the short seam of the Military Specification was merely "accidental" and no bar.

It is concluded after considering the history of the sleeping bag art and the subject invention, the state of the prior art presented by defendant, the differences between the prior art and the subject invention, the recognition of patentable invention by the Canadian Government, and by the United States Patent Office proceeding, that it was unobvious in *1952* to construct a sleeping bag as described and claimed in the patent in suit. The patent in suit is valid.

In 1953 the United States Air Force, acting through the Canadian Commercial Corporation, purchased 10 sleeping bags including drawings from the plaintiff that contained the insulated seam structure. After testing the sleeping bag, defendant promulgated a specification directed to survival sleeping bags designated as "Sleeping Bags, Aircrew Survival Type MC–1." The defendant has purchased 17,291 of the accused sleeping bags constructed in accordance with the specification. As more fully explained in the accompanying findings, the accused sleeping bags embody the subject

---

1. Defendant cites this passage from the *General Electric* opinion: "Where there has been use of an article or where the method of its manufacture is known, more than a new advantage of the product must be discovered in order to claim invention. [case citation] It is not invention to perceive that the product which others had discovered had qualities they failed to detect."

invention disclosed and claimed in the patent in suit. Defendant was not licensed to use said invention.

Plaintiff contends that reasonable and entire compensation for such infringement should be based upon a royalty rate of 6 percent of the purchase price plus 4 percent annual interest for delay damages. Such a suggested royalty rate is based upon the proposition that since plaintiff is a citizen of Canada he would be expected to license the Canadian Government at a royalty rate lower than that for a foreign government such as the United States, and considering that the Canadian license was the first license which normally is issued at a lower rate, plaintiff should be entitled to compensation based upon a royalty rate greater than the approximate 4-percent royalty rate paid by the Canadian Government. Defendant contends that recovery based upon a 6-percent royalty rate is unreasonable, asserting that the subject invention was a minor contribution to the art. Defendant's position is inconsistent with the actions taken by the Canadian Government, the English 1953 Mount Everest Expedition, and the United States Air Force that attest to the contribution made by the subject invention.

In considering the merits of the subject invention, the benefits derived by the defendant by virtue of the subject invention, the low level of procurement of survival sleeping bags, the nonexclusive license granted to the Canadian Government, and the position of the parties, it is concluded that reasonable and entire compensation should be based upon a royalty rate of 5 percent.

It is concluded that plaintiff is entitled to recover as reasonable and entire compensation the sum of $45,786.01 which sum includes $11,473.76 for delay damages through December 1966. Plaintiff is also entitled to recover interest at 4 percent per annum as part of just compensation, from January 1, 1967, to the date of payment.

COLLINS, Judge, took no part in the decision of this case.