Samuel L. PALMER and Standard Parts
& Equipment Corporation
v.
The UNITED STATES.
No. 86–66.

United States Court of Claims.
March 20, 1970.

Herbert J. Brown, New York City, attorney of record, for plaintiffs; Munson H. Lane, Washington, D.C., of counsel.

James D. Stokes, Jr., Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner James F. Davis, with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57(a) [since September 1, 1969, Rule 134(h)]. The commissioner has done so in an opinion and report filed on September 9, 1969. Exceptions to the commissioner's opinion, findings of fact and recommended conclusion of law were filed by defendant and the case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court agrees with the commissioner's opinion, findings and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Therefore, plaintiffs are entitled to recover reasonable and entire compensation for unauthorized use by defendant of the valid and infringed patent claim and judgment is entered for plaintiffs with the amount of recovery to be determined pursuant to Rule 131(c)(2).

## OPINION OF COMMISSIONER

DAVIS, Commissioner:

This is a patent suit under 28 U.S.C. § 1498 to recover "reasonable and entire compensation" for unauthorized use by the government of plaintiffs' patented invention. Only the issue of liability is before the court; accounting, if any, is deferred to later proceedings. The patent in suit, issued to Samuel L. Palmer in 1957, relates to emergency lights, particularly useful for marking airport runways at night. Palmer is one plaintiff; his coplaintiff is Standard Parts & Equipment Corporation (hereafter "Standard"), the exclusive licensee under the patent.

This case was earlier before the court on defendant's motion for summary judgment that the patent is invalid as "anticipated" under 35 U.S.C. § 102, or "obvious" under 35 U.S.C. § 103 in view of certain prior art patents. The trial commissioner recommended denial of the motion. Palmer et al. v. United States, 155 USPQ 524 (1967). The court affirmed, per curiam, Samuel L. Palmer and Standard Parts & Equip. Corp. v. United States, 182 Ct.Cl. 896, 156 USPQ 689 (1968), remanding the case for trial and noting that it was leaving open "the issue of the validity of the patent under 35 U.S.C. § 103," and "the impact upon this case of the rule of General Electric Co. v. Jewel Incandescent Lamp Co., 326 U.S. 242, [66 S.Ct. 81, 90 L.Ed. 43] (1945)."

Trial was held. Plaintiffs introduced evidence of commercial success, felt need, and failure of others, all of which the U.S. Supreme Court has held may constitute "secondary considerations" in resolving the issue of "obviousness or unobviousness" under 35 U.S.C. § 103. Graham v. John Deere Co., 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Defendant introduced additional prior art, not considered by the Patent Office, and adheres to its contention that the patent is invalid under 35 U.S.C. §§ 102 or 103. Defendant also says the patent is not infringed and is invalid under 35 U.S.C. § 112 which requires, among other things, that patent claims "particularly point out and distinctly claim" the invention.

For reasons below expressed, the patent is held valid and infringed.

*Patent in suit*

Palmer's patented invention is the essence of simplicity. It is a battery-operated electric lamp secured to a bag filled with ballast, such as gravel, sand or the like. By way of background, Palmer served in World War II and in the Korean War as an Air Force pilot. Flying in Asia in the 1940's, and later in Iceland in the early 1950's as operations officer of the Icelandic Defense Command, he recognized the need for a safe and dependable portable landing light for use with temporary or emergency landing strips or with established airfields in the event of an electrical power failure at night. Kerosene smudge pots were commonly used during both wars. However, smudge pots were not entirely satisfactory because they created a fire hazard, required liquid fuel, produced smoke, and were dirty to handle. Palmer's concern for adequate emergency lights was shared by Col. M. A. Elkins, formerly commanding office of Andrews Air Force Base (AFB), who served with Palmer in the Air Force in Iceland. Elkins recalled occasions in Iceland when smudge pots were used but were unsatisfactory because unstable on snow, particularly in high winds. Elkins also recalled fires during his Air Force career caused by overturned smudge pots at the scene of aircraft accidents.

Sometime during or shortly after serving in Iceland, Palmer conceived the idea of a battery-operated emergency light having a flexible support base filled with loose ballast, the ballast being removable from time to time. The light was intended to be mobile, dependable, nonhazardous, and useful under all adverse weather and terrain conditions. In 1953 Palmer made and tested several prototype devices, the details of which are not clear from the record.

In 1955, Palmer filed his patent application. As described in the specification and drawing, the light consists of a bag with an open mouth in which an electric lamp is inserted and through which ballast is added to or removed from the bag. The bag is made of flexible material, such as canvas. Material at the mouth of the bag is hemmed around a stiffener wire which provides a circular opening. The lamp comprises a transparent dome, a reflector, an incandescent bulb, a battery receptacle, a battery, and associated wiring. A clamp, similar to an automobile radiator hose clamp, holds together the elements of the lamp and secures them in the bag opening. Ballast is put into or taken out of the bag by loosening the clamp and removing the lamp.

The "crux of the invention," so plaintiffs assert, is that the bag is "normally empty" and is intended to be filled with ballast in use and emptied of ballast when not in use. The patent specification says:

\*      \*      \*      \*      \*      \*

Another object [of the invention] is to provide a collapsible support for an electric emergency light which may be readily filled with natural ballast, such as sand, gravel, broken ice or snow available at the place of use.

\*      \*      \*      \*      \*      \*

In operation, the bags \* \* \* may be filled with any convenient ballast \* \* \* and dropped from a truck at intervals along the borders to be outlined. \* \* \* the ballast should be removed when the emergency light units are not in use so as to preserve the bags.

\*      \*      \*      \*      \*      \*

In 1955, soon after filing his patent application, Palmer entered into a license contract with Sta-Parts Manufacturing Company, Fort Worth, Texas (hereafter "Sta-Parts"), to make a device called the "Bekon" light. The "Bekon" differs from the device disclosed in the patent specification in the following material respects: (1) The electric lamp is permanently secured in the mouth of the bag by a metal band which surrounds the bag's throat; and (2) ballast is added to or removed from the bag through a zippered slot on one side. Palmer and representatives of Sta-Parts visited Wright-Patterson Air Force

Base, and Army personnel in Washington, D.C., soliciting interest in the "Bekon" light. The Army tested it in 1956; evaluated drawings submitted by Sta-Parts; and in 1959 issued a military specification setting out requirements for an emergency light substantially like the "Bekon." In 1962 the Defense Department issued a tri-service military specification incorporating the earlier Army specification.

Plaintiffs have furnished thousands of "Bekon" lights to defendant under military specification since 1959 for use by all three military services. Some lights were furnished to the Air Force even earlier. The Army has been the largest procurer, purchasing the lights either as individual units or together with canvas carrying bags in which 12 lights are stored in separate pockets without ballast. The carrying bag is of rugged construction and is designed to be transported by hand or vehicle from place to place, or dropped by helicopter; and the lights are intended to be filled with ballast where used.[1] The Air Force has used the lights to line runways in emergencies and to mark helicopter landing areas. Colonel Elkins, while at Andrews AFB in 1955, tested "Bekon" lights and procured a substantial number. The lights were filled with sand ballast and stored on tow trailers for ready availability in event of aircraft emergency landings. At least once, lights were transported to another Air Force base, the ballast being removed before shipment.

About 1965, defendant began procuring emergency lights, in all material respects identical to the "Bekon" light, from sources other than plaintiffs. This suit followed.

*The patent claim*

The sole patent claim reads:

An emergency light comprising a normally empty flexible bag, a self contained electric light unit comprising

a battery housing,

means supporting a light source in operative association with said housing, and

a transparent cover enclosing said light source,

means attaching said bag to said unit in such manner as to provide, when filled with suitable loose weights, a base for said unit,

an aperture in said bag through which said weights may be inserted or removed, and

means for opening said aperture to permit filling said bag.

A threshold issue is the scope and meaning of the claim. Defendant says the claim fails to comply with 35 U.S.C. § 112[2] because (1) the phrase "normally empty" is "hazy and indefinite"; and (2) an element of the claimed combination, viz. the circular clamp, is "twice recited" thus rendering the claim "ambiguous, vague and indefinite." A principal purpose of § 112 is to require patentees to define their inventions with such particularity that would-be infringers know the metes and bounds of legal protection to which the patentee is entitled. Brooks v. Fiske, 56 U.S. (15 How., 212, 214–215, 14 L.Ed. 656 (1853); Nelson v. Batson, 322 F.2d 132, (9th Cir. 1963). Claims are to be construed in light of the specification. Dominion Magnesium Ltd. v. United States, 320 F.2d 388, 162 Ct.Cl. 240, (1963). And claim construction, a practical matter, should be done on a rational basis to

---

1. The bags are stenciled with instructions: "Fill with ballast before using."

2. Section 112 * * *
   The specification shall conclude with one or more claims particularly pointing

out and distinctly claiming the subject matter which the applicant regards as his invention. * * *

avoid unreasonable and unjust results. Emery Industries, Inc. v. Schumann, 111 F.2d 209, (7th Cir.1940); IV Walker, Patents § 264 (Deller's 2d ed. 1964). Defendant's objection to the phrase "normally empty" appears to be that it is misdescriptive. Defendant says, " * * * if the claimed device is really supposed to be an 'emergency' light it would *not* be 'normally empty' but rather it would be 'normally full' of ballast so as to be ready to set up on a runway."

Though not expressly defined in the patent specification, we think the phrase "normally empty" is clear when read in light of the disclosure as a whole. It states the patentee's concept that the ballast bag is intended to be filled with ballast prior to and in use and emptied of ballast otherwise. The device described in the patent specification is directed to that end, though the specific embodiment disclosed is not as practical as plaintiffs' commercial "Bekon" light. No doubt, as defendant suggests, one could fill the bag with ballast and keep the bag filed throughout its life, in which case the bag would not be "normally empty." But that is not the mode of use contemplated by the patentee, nor is it the way the bags are actually used. The patent teaches using "natural ballast" available at the use site, such as "sand, gravel, broken ice or snow," and also suggests removing ballast when the lights are not in use "to preserve the bags." As already noted, the Army uses the bags precisely as contemplated in the patent, i. e., the bags are filled on site and emptied thereafter before transport. The Air Force keeps the bags filled, when on tow trailers and ready for use on runways, but empties them prior to shipment elsewhere.

Defendant further argues that the claim is "indefinite" because the circular clamp is "twice recited," once as "means attaching said bag to said unit" and again as "means for opening said aperture to permit filling said bag." Plaintiffs deny double recitation of the clamp. But as the claim must be construed to be supported by the specification, the clamp is at least part of each "means." In any event, double recitation of elements of combination inventions does not necessarily render a claim vague and indefinite, particularly if the claim is drafted in terms of means clauses under 35 U.S.C. § 112, or if an element performs more than one function or overlapping functions. Phillips v. Lynch, 367 F.2d 601, 607 (1966); Ellis, "Patent Claims", § 17 (1949). As stated by the Court of Customs and Patent Appeals in In re Kelley, 305 F.2d 909, 916, 49 CCPA 1359. (1962), "The governing consideration is not *double inclusion*, but rather is what is a reasonable construction of the language of the claims." Because the bag disclosed in the patent specification has but one aperture, the clamp serves dual functions: it closes the bag to hold in ballast and secures the lamp in the bag. It therefore is properly considered an element of each means clause and does not render the claim indefinite. Accordingly, the claim complies with 35 U.S.C. § 112.[3]

*Validity*

Defendant says the patent claim is invalid under 35 U.S.C. § 102(b) as anticipated by a U.S. patent to Ford et al ("Ford patent"). Alternately, defendant says the claim is invalid under 35 U.S.C. § 103 as defining an invention

---

3. The somewhat unorthodox manner in which the claim is drafted can be explained by applicant's desire to include within its scope the commercial version of the invention, the "Bekon" light. Since the ballast bag of the "Bekon" has two apertures (one for the lamp, one for ballast removal) rather than one as disclosed in the patent specification, the claim was written to cover both embodiments. Read literally, the claim comes closer to defining the "Bekon" light than the device disclosed in the patent specification and drawing. However, defendant has never contended, nor did the patent examiner, that the claim is not supported by the disclosure, as it must be under the law. 35 U.S.C. § 112; Patent Office Rule 75 (37 C.F.R. § 1.75). Construed as set out in finding 7, the claim is so-supported.

which is obvious within the meaning of the statute. To anticipate, a prior art reference must disclose all the elements of a claimed combination, or their equivalents, functioning in substantially the same way to produce substantially the same result. Straussler v. United States, 339 F.2d 670, 168 Ct.Cl. 852 (1964); *Palmer, supra.* The Ford patent, issued in 1951 and entitled "Safety Stanchion," teaches a "collapsible or fluid inflatable safety stanchion" for use as a "highway warning device or similar form of danger signal." It is made of rubberized fabric and is said to fill a need for safety stanchions which cause no "serious bodily injury and property damage as a result of persons or vehicles colliding with them." It comprises in essence an inflatable tube base, four upright inflatable supports tubes around which is fastened a fabric sheet, an inflatable tubular ring at the top of the support tubes, and a "flasher light or signal" mounted on a wood platform atop the tubular ring. Though no dimensions are set out in the patent specification, the drawing suggests the device to be about 3–4 feet high. In use, the support tubes and tubular ring are inflated with air to vertical upright position. The base is filled with water to stabilize the stanchion against overturn. Other weights such as "water, soil, stones or other forms of weighting means" can be put into the device through the top by removing the wood platform.

Though totally different from plaintiffs' emergency light in appearance, size and mode of use, defendant says Ford anticipates because it teaches a "battery-operated light having a collapsible base adapted to receive loose weight ballast material through an opening at its top." We hold, however, that despite certain similarities in principle between the devices, there is not the identity of means, function and result necessary to make out anticipation. For example, Ford does not have a "bag" which is "filled with suitable loose weights" within the meaning of plaintiffs' speci-

fication and claim. Defendant recognizes this, but argues that "the stanchion could be filled with ballast to the top if that were desired" thus using the stanchion walls "to retain that ballast" and serve as a bag. Nothing in Ford suggests such use; and in fact, it is contrary to the patentees' intent since the stanchion, resilient and filled with pressurized air, must give way when hit by a vehicle. If filled with ballast material, it would no longer be a resilient device. Therefore, defendant's interpretation of Ford as anticipatory prior art is without merit.

■ Whether the claim defines an invention obvious under 35 U.S.C. § 103 requires factual analysis of (1) the scope and content of the prior art, (2) the differences between the prior art and the claim in issue, and (3) the level of ordinary skill in the pertinent art. Secondary considerations such as commercial success, satisfying felt need, and failure of others may have relevance Graham v. John Deere Co., *supra*; Martin-Marietta Corp. v. United States, 373 F.2d 972, 179 Ct.Cl. 70, (1967). To show the prior art, defendant relies on 14 patents and some earlier military specifications which teach, among other things, a variety of battery-operated emergency lights. None of the prior art lights, however, use plaintiffs' idea of a flexible bag support base in which ballast can readily be added to or removed from the bag. In fact, the prior devices show that despite no dearth of activity in the art of portable emergency lights, particularly during and just after World War II, no one came up with Palmer's simple but highly practical idea until 1953, even though the problem of adequate aircraft emergency lights is as old as flying itself. This is persuasive evidence of unobviousness. Also pertinent is the fact that for the most part, the prior art devices are relatively complicated and expensive to make and repair, and are not adaptable for use over a wide range of operating conditions. Under the circumstances, therefore, the simplicity of plaintiffs' light

is a hallmark of its unobviousness. Aronson v. Toy Devices, Inc., 1 F.2d 91 (3d Cir. 1924); van Veen v. United States, 386 F.2d 462, 181 Ct.Cl. 884 (1967).

Defendant stresses two references, not cited by the Patent Office, a U.S. patent to Gearon et al ("Gearon") and a British patent to Scott-Foxwell, both of which were considered by this court in the earlier proceeding on summary judgment. Gearon relates to signal flares of the type used by trainmen to warn succeeding traffic of an emergency. The flare is mounted in a perforated paper bag filled with sand which serves as a weighted base. When thrown from a moving train, the bag, upon hitting the ground, bursts at the perforations and sand seeps out to form a widened support base for the flare. Scott-Foxwell teaches a flexible bag support base "for supporting articles [e. g., a reading lamp] on uneven, slippery or yielding surfaces." The bag has a circular opening through which "an amorphous or pulverulent-mass" such as kaolin[4] is put as ballast. The opening is sealed by sandwiching bag material at the periphery between two circular discs held together by a screw and nut. The discs, besides sealing up the bag, serve as a support for the reading lamp or other article attached to the bag. There is no suggestion in the patent that the discs be removed from time to time to add or remove ballast, there being no apparent reason to do so.

Patents are presumed valid. 35 U.S.C. § 282. Defendant says, however, the presumption of validity is overcome here because Gearon and Scott-Foxwell are more pertinent prior art than considered by the Patent Office. During prosecution of the patent application, the patent examiner considered prior art patents in two categories: (1) Those which teach an electric light secured atop a support such as a portable metal base, and (2) those which teach beanbag or loose ballast-containing supports in combination with ashtrays, baby bottle holders, and the like. The examiner rejected broad claims to the combination of an electric light with a loose ballast-containing support on grounds that such combination would be obvious in view of (1) and (2), above. Applicant then narrowed the scope of the claim by reciting as a limitation, among other things, that the bag was "normally empty", a difference not taught by the art and one crucial to a proper defining of the invention. The examiner thereafter allowed the claim. Gearon does not disclose a normally empty support bag in combination with a battery-operated light. It is no more pertinent than prior art considered by the Patent Office. While Scott-Foxwell suggests the combination of a reading lamp with a loose ballast-containing bag, a concept closer to the device in suit than any considered by the Patent Office, it still does not teach the essential features upon which patentability was predicated. Accordingly, the presumption of validity is not overcome. See Preformed Line Products Co. v. Fanner Mfg. Co., 328 F.2d 265, 271, (6th Cir. 1964) cert. denied, 379 U.S. 846, 85 S.Ct. 56, 13 L.Ed.2d 51.

Plaintiffs stress commercial success and satisfying felt need as indicia of unobviousness. While these factors are but "secondary considerations," they are entitled to weight here. The government has procured thousands of the plaintiffs' lights, which in itself indicates satisfaction of felt need. No doubt in most instances, they replaced smudge pots or other less suitable equipment. And so far as the record shows, the military services specify no other emergency light which is so simple of construction, relatively inexpensive, easy to maintain and repair, and readily transportable for use under widely varying operating conditions. (See finding 19.) Colonel Elkins, while commanding officer at Andrews AFB, wrote an article for "the MATS flyer," a publication of the Military Air Transport Service,

4. Kaolin is finely divided aluminum silicate, somewhat like talcum powder.

praising plaintiffs' "Bekon" light. The article says, among other things—

The problem of ballast, a minor one, also came in for experimentation. Andrews AFB finally settled on sand, after trials with gravel. It is felt that this ballast will prove sufficient even under the stress of high winds or direct jet blast. Any type of ballast can be used—snow, dirt, rocks, water (let freeze), among others.

I have long felt the need for a more satisfactory emergency light, and through the continuous testing conducted by Wing Operations and Transient Maintenance, I feel that we have found the answer in Bekon. Hq USAF and other major commands have been closely watching our lead on this.

At Andrews, the Bekon has meant increased readiness, mobility, and flexibility of lighting. And it may soon become as much a part of the Air Force as its namesake, the beacon.

■ In sum, giving due regard to the prior art, the Patent Office file history of the patent application, and the secondary considerations of commercial success and satisfying felt need, we hold that plaintiffs' patent satisfies the requirement for patentability under 35 U.S.C. § 103.[5]

*Infringement*

■ Infringement is made out if an accused device uses the same means functioning in substantially the same way to accomplish substantially the

same result. Badowski v. United States, 140 F.Supp. 544, 135 Ct.Cl. 93 (1956); Barrett v. United States, 405 F.2d 502, 186 Ct.Cl. 210 (1968). The accused device, in all material respects identical to plaintiffs' "Bekon" light, meets these criteria and responds to the terms of the claim.

■ Defendant says, however, the claim must be narrowly construed to cover only the device shown in the specification and drawing. We see no valid reason from the prior art or the Patent Office file history for so-limiting the claim. Zonolite Co. & Insulating Concrete Corp. v. United States, 149 F.Supp. 953, 138 Ct.Cl. 114 (1957). However, even if so-limited, it is entitled to a reasonable range of equivalents, commensurate with the scope of the invention. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); Pratt & Whitney Co. v. United States, 345 F.2d 838, 170 Ct.Cl. 829 (1965). In the accused device, ballast is added to or removed from the bag through a slot on the bag's side, rather than through the opening which houses the lamp. While no doubt the accused structure is a practical improvement over the embodiment shown in the patent, its means, function and result are essentially the same.

Finally, defendant says plaintiffs have not proved infringement because they failed to show that the government uses the accused device in the same manner as plaintiffs' "Bekon" light. While it is

---

5. The "rule" of the *General Electric* case, alluded to by this court in earlier proceedings, is not inconsistent with holding patentability here. *General Electric*, decided in 1945, simply held that the invention there in suit, though novel, was unpatentable because it lacked "invention." *See General Electric, supra,* 326 U.S. at 248, 66 S.Ct. at 83, where the Court says: " * * * it does not appear in the present case that prior to Pipkin electric bulbs had been frosted on the interior with rounded rather than sharp angular crevices or pits [hence, novelty]." However, the Court then said, "In view

of these [prior art] disclosures, it is difficult to see how there could be *invention* in frosting either the outside or inside of an electric bulb * * *." (Emphasis added.)

The 1952 Patent Act, in 35 U.S.C. § 103, for the first time stated the requirement for "invention" in terms of obviousness to those skilled in the art; and the Supreme Court in 1966 set out guidelines under which § 103 is to be applied. *Graham, supra.* Those guidelines are here followed. They were also followed in *van Veen, supra,* another case in which this court considered *General Electric.*

true plaintiffs' proofs were directed to how the "Bekon" is used, the accused device and the "Bekon" are, in all material respects, identical and are made and procured under the same military specification presumably for the same purpose. Similar use can be inferred. Nothing in the record suggests otherwise.

Accordingly, the claim is infringed.